FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. JOHN R. BURKE et al., Appellees.

No. 44184.

JUNE 21, 1938.

Shull & Stilwill and M. P. Lawless, for appellant.

Prichard & Prichard, for appellees.

56

MILLER, J.—On June 27, 1934, plaintiff-appellant brought this action to foreclose a real estate mortgage upon 160 acres of land owned by defendants-appellees in Woodbury County. On September 25, 1934, a continuance was granted to March 1, 1935, under the provisions of the Acts of the 45th General Assembly, ch. 179; and on February 27, 1935, one of the appellees filed a motion for a second continuance until March 1, 1937, under the provisions of the Acts of the 46th General Assembly, ch. 110, to which motion resistance was filed. Following hearing thereon the resistance to this motion was sustained and the motion for further continuance overruled. Thereafter, on May 25, 1935, a decree of foreclosure was entered rendering personal judgment against appellees John R. Burke and Wm. Burke, in the sum of $15,665.28, together with interest and costs, following which the real estate involved was sold under special execution on June 26, 1935, to appellant, for the sum of $13,550.94, leaving a deficiency judgment in the sum of $2,500.

Thereafter, on September 6, 1935, said appellees filed a motion to extend the period of redemption to March 1, 1937, in accordance with the provisions of the Acts of the 46th General Assembly. To this motion resistance was filed, following which hearing was had on October 29, 1936, at which hearing testimony was introduced and made a matter of record. Following this hearing the trial court entered an order extending the period of redemption to March 1, 1937, as prayed by appellees.

Thereafter, on February 27, 1937, said appellees filed their second application for an extension of the period of redemption, therein asking that said period be extended to March 1, 1939, in accordance with the provisions of the Acts of the 47th General Assembly. Upon the filing of said application on February 27, 1937, the court entered an order therein providing that said application should stand for trial at the March 1937 term of the district court of Woodbury County, Iowa, and therein also providing that notice thereof should be given appellant by the clerk of said court, by registered mail. However, no notice was actually given as directed by said order prior to March 1, 1937. On March 13, 1937, appellant filed its resistance to the application of appellees for a second extension of the period of redemption; said resistance being based upon the four following contentions: (1) That no order of court setting the time and place of hearing on said application, and notice thereof, was given

prior to March 1, 1937, and that by reason thereof the court was without jurisdiction to grant a further extension; (2) that the premises involved were not of sufficient value to pay the amount owing to appellant; that the appellees were insolvent; that their application for a second extended period of redemption was not filed in good faith, and that there was no reasonable possibility that they would be able or willing to refinance or redeem the real estate involved, on or before March 1, 1939; (3) that the Acts of the 47th General Assembly providing for extensions of the period of redemption were unconstitutional; and (4) that the appellant herein is an agency and instrumentality of the government of the United States, and therefore immune from the provisions of the Acts of the 47th General Assembly providing for the extension of periods of redemption.

This application for a second extension of the redemption period came on for hearing before the court on May 28, 1937, at which hearing it was stipulated that the application herein was filed on February 27, 1937; that an order providing for hearing was entered on said date, and that no notice of said hearing was served, as required by said order, upon appellant or its attorneys of record; and that the oral evidence and the record made at the hearing on October 29, 1936, (supra) should constitute the record of evidence to be considered by the court. No further record was made at said hearing, as a result of which no record was made or evidence taken relative to the contentions of appellant that the act in question was unconstitutional, or that said act did not apply to appellant on account of its claim of immunity therefrom as a governmental agency. Likewise, neither of said contentions are argued or commented upon in this appeal, and we are therefore only concerned with whether or not the action of the trial court in granting the second extended period of redemption was erroneous on account of the matters raised by appellant in the first and second contentions of its resistance.

The first contention of appellant is based upon the proposition that on account of the fact that no notice was given prior to March 1, 1937, of the hearing upon the application filed by appellees on February 27, 1937, that the court was without jurisdiction to grant a further extension. We have recently had before us this identical question for determination and in our recent cases have definitely determined that in all actions wherein

an order had theretofore been granted extending the period of redemption, and wherein an application for further extension was filed before March 1, 1937, that such first extended period of redemption was extended until the hearing upon the application for the further extension of the period; and that therefore the court was not without jurisdiction. See Prudential Ins. Co. v. Lowry, 225 Iowa 60, 279 N. W. 132; Prudential Ins. Co. v. Kelley, 225 Iowa 175, 279 N. W. 416; Prudential Ins. Co. v. Soloth, 225 Iowa 172, 279 N. W. 399.

█ The remaining contention of appellant is that the premises involved were not of sufficient value to pay the amount due appellant; that appellees are insolvent; that their application is not filed in good faith, and that there is no reasonable possibility that they will be able or willing to refinance or redeem the real estate involved on or before March 1, 1939.

The evidence establishes that this farm of 160 acres is all good rolling land, is not cut by gullies, has no creeks or waste land and is all subject to cultivation; and that the buildings and improvements are in fair state of repair. This farm is situated in the area that was affected by the drought during the years 1935 and 1936, as a result of which a very meager crop was raised in 1935, and in 1936 no crop whatever was produced. An effort was made to refinance the indebtedness by applying to the Federal Land Bank for a loan in November of 1934, at which time said bank made a commitment of $9,000.

The only property possessed by appellees, other than the premises in controversy, consists of four head of horses, ample farm machinery sufficient to operate the land in question, four cows and twenty head of hogs. The farm machinery, horses, and cows are covered by a chattel mortgage to secure the sum of $1,000, the evidence being indefinite as to whether the hogs were included in this mortgage. This item of $1,000 is the only indebtedness of appellees other than their indebtedness to appellant. The only witnesses who testified as to the value of the real estate were one Miner, the receiver in charge, who was likewise receiver in about 15 other foreclosures instituted by appellant, appellee John Burke, and his father. The receiver fixed the value of the land at $65 to $75 an acre, while the remaining two witnesses, the Burkes, fixed the value at $100 per acre. It is to be recalled that the total amount of indebtedness due at the time of the sale under special execution was $16,050.94.

While it is the contention of appellant that this evidence conclusively established that the value of the land was insufficient to pay the indebtedness, it is to be observed that the testimony was in conflict as to its valuation. If the testimony of appellee Burke and his father is to be accepted, the same places the value of the real estate at practically the same figure as the total amount of the indebtedness at the time of the sale under special execution.

It has been the uniform holding of this court that the granting of an extended period of redemption should be the rule, and that such extension of the period of redemption should be granted unless good cause is shown to the contrary. In so holding we have only followed the express mandate of the statute, and have uniformly held that there is no burden upon the applicant to show that good cause exists for granting the extension, but that the burden of showing that good cause exists for the denial of the extension is upon the party resisting. Appellant herein, in endeavoring to meet this burden, does so simply by attempting to make a showing of the present insolvency of the mortgagors and the present inadequacy of the security. The contentions of appellant that the application herein was not filed in good faith, and that there is no reasonable possibility that appellees will be able or willing to refinance or redeem on or before March 1, 1939, are both based solely upon this claimed insolvency of the mortgagors and inadequacy of the security. At no place in the entire record is there any evidence that can to the least degree be considered as indicative of any bad faith on the part of appellees. In view of the testimony as to value, coupled with the record as to the nature of the premises involved, it does not seem to us that the entire record establishes conclusively that there is no reasonable probability whatever of appellees' being able to pay off, refinance, or redeem the property in question. Even though it should be conceded that the record herein does reveal insolvency of the appellees and inadequacy of the security, it is to be recalled that we are concerned with the moratorium legislation of the 47th General Assembly, wherein it is provided in section 2 of chapter 78 that, ''However a showing of present insolvency of the mortgagor or mortgagors and/or present inadequacy of the security shall not in themselves be sufficient to constitute good cause within the meaning of this act.'' We have had occasion to interpret this

60

legislation of the 47th General Assembly in two recent decisions, wherein was involved the question of granting a continuance. In the case of Metropolitan Life Ins. Co. v. Henderson, 224 Iowa 1238, loc. cit. 1241, 278 N. W. 621, 623, Justice Kintzinger in speaking for the court uses the following language:

"It is evident from the wording of this statute that something more than insolvency or inadequacy of the security must be shown to justify a refusal to grant a continuance. The only showing made for refusing to grant the continuance in this case is that the security is not sufficiently adequate to meet the indebtedness and that appellees may be insolvent."

In the case of Prudential Ins. Co. v. Redmond, 225 Iowa 166, 279 N. W. 392, this court construed a similar statutory provision, applicable to continuances, to mean that a showing of present insolvency of the mortgagors and present inadequacy of the security were insufficient to deny a continuance upon the ground that there was no reasonable probability that the mortgagor would be able to pay off, refinance, or redeem.

The application of our interpretation of this legislation in the two cited cases to the instant case results in the conclusion that the action of the trial court herein in granting the extension of the period of redemption was correct.—Affirmed.

STIGER, C. J., and MITCHELL, ANDERSON, RICHARDS, and KINTZINGER, JJ., concur.